# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

In re Application of

ALPINE PARTNERS (BVI) L.P.,

Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding.

Case No. 23-

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

PALLAS PARTNERS (US) LLP

Duane L. Loft
Brianna Hills Simopoulos
Mark C. Davies
75 Rockefeller Plaza
New York, NY 10010
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com
Mark.Davies@pallasllp.com

*Attorneys for Petitioner*

Dated: May 23, 2023

# TABLE OF CONTENTS

APPLICATION ................................................................................................ 1

PRELIMINARY STATEMENT ..................................................................... 1

BACKGROUND ............................................................................................. 3

        A.    Myovant .............................................................................. 3

        B.    The Merger.......................................................................... 4

        C.    Bermuda Appraisal Proceeding ......................................... 7

        D.    Respondents and the Discovery Sought.............................. 8

ARGUMENT.................................................................................................. 12

I.     The Application Satisfies the Three Statutory Requirements of 28 U.S.C.

     § 1782. ............................................................................................. 13

        A.    Respondents Are Found in this District. .................................... 13

        B.    The Discovery Sought is "For Use" in a Foreign Proceeding. ................. 16

        C.    Petitioner Is An "Interested Person." ....................................... 18

II.    The *Intel* Factors Weigh Strongly in Favor of discovery. .................................... 18

        A.    *Intel* I: Respondents Are Not Parties to the Appraisal Proceeding........... 18

        B.    *Intel* II: The Bermuda Court is Receptive to the Requested Discovery.... 19

        C.    *Intel* III: Petitioner Is Not Circumventing Foreign Proof-Gathering

            Restrictions. ...................................................................... 20

        D.    *Intel* IV: The Subpoenas Are Not Unduly Burdensome. ......................... 22

CONCLUSION............................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Am. Patriot Ins. Agency, Inc. v. Hendricks*,
No. 10-CV-00985, ECF No. 8 (N.D. Ill. Feb. 19, 2010) ........................................................ 20

*Azima v. Citibank, N.A.*,
No. 1:22-MC-72 (KPF), 2022 WL 1287938 (S.D.N.Y. Apr. 29, 2022) ................................. 18

*Brandi–Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012) ................................................................................ 17, 19, 21

*Bristol-Myers Squibb Co. v. Superior Ct. of Ca., San Francisco Cty.*,
137 S. Ct. 1773 (2017) ........................................................................................................ 14

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) ................................................................................................. 13

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................................................................. 14

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015) ................................................................................................. 16

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................................................. 13

*Euromepa, S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) ..................................................................................... 19, 21, 23

*First Am. Corp. v. Price Waterhouse LLP*,
154 F.3d 16 (2d Cir. 1998) ................................................................................................... 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ....................................................................................................... 13, 14

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
No. 19-MC-80215-(WHO) (TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ................. 22

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017) ....................................................................................... 12, 16, 17

*In re Accent Delight*,
No. 5:20-mc-00004-M, 2018 WL 2849724 (S.D.N.Y. June 11, 2018) ................................ 23

*In re Al-Attabi*,
21-MC-207 (VSB) (RWL), 2022 WL 229784 (S.D.N.Y. Jan. 26, 2022) .............................. 19

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
   No. CIV.M19-88 BSJ, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) .................................. 22

*In re Application of Hill*,
   2005 WL 1330769 (S.D.N.Y. June 3, 2005) ........................................................ 20

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998)........................................................................ 21

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019)....................................................... 13, 14, 16, 21

*In re Gushlak*,
   No. 11-MC-218 (NGG), 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011)............................. 22

*In re Habib*,
   No. 1:21-MC-522 (KMK), 2022 WL 1173364 (S.D.N.Y. Apr. 20, 2022)........................... 23

*In re Kuwait Ports Authority*,
   No. 1:20-MC-00046-ALC, 2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) .......................... 16

*In re Lane*,
   No. 22 MISC. 34 (LGS), 2022 WL 16737132 (S.D.N.Y. Nov. 7, 2022) ............................ 13

*In re Mother's Milk, Inc.*,
   No. 5:20-mc-00004-M, 2020 WL 2514315 (S.D.N.Y. May 15, 2020) ................................ 23

*In re Porsche Automobil Holding SE*,
   No. 1:15-mc-417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ................... 12, 19, 23

*In re Top Matrix Holdings, Ltd.*,
   1:18-MC-465 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020)................................... 21, 23

*In the Matter of the Application of Winston Wen-Young for Assistance Before a Foreign
   Tribunal*,
   No. 21-cv-8627, ECF No. 19 (D. N.J. June 15, 2021).......................................... 20

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)............................................................................... 13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241, 264 (2004)................................................................... passim

*Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*,
   No. 11 CIV 5980 RA JLC, 2013 WL 5977440 (S.D.N.Y. Nov. 12, 2013), *report and
   recommendation adopted,* No. 11 CIV 5980 RA JLC, 2014 WL 112397 (S.D.N.Y.
   Jan. 8, 2014)...................................................................................... 14

*Marubeni Am. Corp. v. LBA Y.K.*,
    335 Fed. App'x 95 (2d Cir. June 17, 2009) ........................................................................ 12

*Matter of Degens*,
    No. 1:20-MC-237 (JGK) (RWL), 2020 WL 4252725 (S.D.N.Y. Jul. 24, 2020).................... 22

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015)............................................................................. 12, 17, 21

*Motorola Credit Corp. v. Uzan*,
    No. 02 CIV.666 (JSR), 2002 WL 31319932 (S.D.N.Y. Oct. 16, 2002) ................................ 14

*Oasis Focus Fund LP v. New Wave MMXV Ltd.*,
    No. 22-mc-80291-TLT, ECF No. 42 (Order) (N.D. Cal. March 8, 2023)............................. 15

*Owen v. Elastos Found.*,
    No. 1:19-CV-5462-GHW, 2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021) .............................. 14

*Pfaff v. Deutsche Bank AG*,
    No. 20-mc-0025-KPF, 2020 WL 3994824 (S.D.N.Y. July 14, 2020) .................................. 15

*Sergeeva v. Tripleton Int'l Ltd.*,
    834 F.3d 1194 (11th Cir. 2016) ....................................................................................... 16

**Statutes**

28 U.S.C. § 1782................................................................................................................ passim

## APPLICATION

Alpine Partners (BVI) L.P. ("Petitioner") respectfully submits this application pursuant to 28 U.S.C. § 1782 (the "Application") seeking an order: (a) granting Petitioner leave to serve subpoenas on Sumitovant Biopharma Ltd. ("Sumitovant Ltd."), Sumitovant Biopharma Inc. ("SBI," and together with Sumitovant Ltd., "Sumitovant"), Ms. Myrtle Potter, Mr. Matthew Gline, Goldman Sachs & Co. LLC, and J.P. Morgan Securities LLC (collectively, "Respondents"); (b) directing Respondents to produce the materials described in the Subpoena within thirty days of service of the Subpoena; (c) directing Respondents each to provide deposition testimony in compliance with the Subpoena on a mutually agreeable date within a reasonable time after each of Respondents' confirmation of its final production of documents in response to the Subpoena issued against it; and (d) granting any and all other relief the Court deems just and proper.

## PRELIMINARY STATEMENT

Petitioner respectfully submits this Application pursuant to 28 U.S.C. § 1782 to take discovery from persons and entities found in this District for use in shareholder appraisal rights litigation (the "Appraisal Proceeding") pending in the Supreme Court of Bermuda (the "Bermuda Court"). In the Appraisal Proceeding, Petitioner (along with other dissenting shareholders) seeks a determination of the fair value of its shares in Myovant Sciences Ltd. ("Myovant" or the "Company"), a Bermuda company that was delisted from the New York Stock Exchange and taken private on March 10, 2023. Petitioner's shares were forcibly canceled through a $1.7 billion take-private merger orchestrated by Sumitovant, then the controlling shareholder of Myovant (the "Merger"). Through this Application, Petitioner seeks discovery relating to the fairness of the Merger price and the process that led to the Merger—the core issues in the Appraisal Proceeding.

Petitioner's Application meets all of the statutory requirements of Section 1782: (i) Respondents each "reside or are found" in this District; (ii) the requested discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioner, a claimant in the Appraisal Proceeding, easily meets the standard for an "interested person" under the statute.  In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioner's Application.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

The first *Intel* factor weighs in favor of discovery because Petitioner seeks discovery from "nonparticipants" in the Appraisal Proceeding.  *Id.*  As recognized in *Intel*, "nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent §1782(a) aid."  *Id.*  Respondents are not named parties in the Appraisal Proceeding or otherwise subject to the jurisdiction of the Bermuda Court.

Under the second *Intel* factor, which considers the character of the foreign proceeding and receptivity of the foreign tribunal, there is no indication, let alone the required "authoritative proof," suggesting that the Bermuda Court might be unreceptive to Section 1782 assistance.  *Id.* To the contrary, as established in the declaration of Petitioner's Bermuda counsel, Mark Chudleigh, Petitioner will have the right to present evidence gathered under Section 1782 to the Bermuda Court in support of its claims.  Several U.S. courts have granted Section 1782 applications for the production of documents in aid of appraisal proceedings, including in Bermuda courts.

Under the third *Intel* factor, the Application is not concealing any improper attempt to circumvent foreign discovery restrictions on proof gathering.  *See Intel*, 542 U.S. at 264. The

requested discovery does not implicate any privilege or special protection that would make it improper under Bermuda law.

Under the fourth *Intel* factor, the proposed discovery is not unduly burdensome. *Id.* To the contrary, the Subpoenas are tailored to seek evidence addressing the fair value of the Petitioner's shares in the Company and the process that the Buyer and the Company undertook to negotiate and approve the Merger. As explained in the accompanying declaration of Petitioner's Bermuda counsel, such evidence is information directly relevant to the critical issues in the Appraisal Proceeding.

Finally, the Court should exercise its discretion to order production of any responsive discovery that Respondents have in their possession, custody, or control, regardless of the physical location of that evidence. Section 1782 is extraterritorial in reach, and courts commonly order discovery of evidence located abroad, particularly where, as here, the discovery is from a third-party not subject to the jurisdiction of the foreign court.

## BACKGROUND

### A.    Myovant

In 2014, Vivek Ramaswamy founded Roivant Sciences Ltd. ("Roivant"), a pharmaceutical technology company that trades on NASDAQ following a SPAC merger transaction in 2021.[1] Roivant formed several subsidiaries it called "vants" that each focused on different

---

[1] Mr. Ramaswamy was the CEO of Roivant until January 2021 and the Chairman of Roivant until February 2023, when he stepped down to focus on his campaign for President of the United States, which is underway. The day after announcing his presidential bid in February 2023, Mr. Ramaswamy sold four million shares in Roivant, worth roughly $32 million at the time, but still owns more than 54 million shares, according to public filings. *See* Jessica Piper, *How Vivek Ramaswamy Made a Fortune before Pivoting to Politics*, POLITICO (May 14, 2023), *available at* https://www.politico.com/news/2023/05/14/how-vivek-ramaswamy-made-money-00096046. The Proxy Statement lists Roivant's business address as the same New York City office space as Sumitovant Ltd. and SBI.

biopharmaceutical sectors.  One of those "vants" was Myovant, a biopharmaceutical company that develops and commercializes treatments focused on women's health and prostate cancer.  Myovant was taken public by Roivant via an initial public offering in 2016, after which Myovant was listed on the New York Stock Exchange.  Sumitomo Pharma Co., Ltd. ("Sumitomo"), a Japanese biopharmaceutical company, acquired its stake in Myovant through a transaction with Roivant in 2019 through which Sumitomo acquired Roivant's interest in certain of Roivant's pharmaceutical companies, including Myovant (the "Roivant Transaction").  *See* Declaration of Duane L. Loft ("Loft Decl."), Ex. 6 (the "Proxy Statement") at 23.  As a result of the Roivant Transaction, Sumitovant became the indirect beneficial owner of a majority of the outstanding Myovant common shares.  *Id.*  Prior to the Merger, Sumitovant beneficially owned approximately 51.5% of the outstanding Myovant shares and had voting power to elect greater than 50% of the Myovant board of directors.  *Id.* at 58.

>>B.<<  **The Merger**

>>1.<<  <u>Pre-Offer Information Sharing and the Special Committee</u>

On February 2, 2022, Sumitovant and Myovant entered into an information sharing agreement pursuant to which "Myovant agreed, for so long as Sumitovant, together with its affiliates, is a majority owner of Myovant, to supply certain information summarizing material aspects of Myovant's business to Sumitovant, and [to] give Sumitovant and its representatives the reasonable opportunity to discuss such information with Myovant's senior management."  *Id.* at 24.

On April 4, 2022, Sumitovant first indicated to Myovant an interest in acquiring the remaining common shares of Myovant that Sumitovant did not already own.  As part of that indication, Sumitovant requested access to conduct due diligence of Myovant's business for the

purpose of considering whether to submit a proposal to acquire Myovant.  *Id.* at 24.  Sumitovant retained J.P. Morgan Securities LLC as its financial advisor.  *Id.*  Sumitovant began issuing information requests for its due diligence, even though it had not yet submitted an offer.  After several days of information requests from Sumitovant to Myovant, Myovant management told Sumitovant to narrow the scope of its information requests "to minimize the diversion of management time and attention that would need to be devoted to the due diligence process prior to receiving a potential proposal."  *Id.* at 25.

Later that month, on April 28, 2022, the Myovant Board formed a Special Committee to evaluate the fairness of and decide whether to approve of any proposed transaction by Sumitovant. *Id.* at 25.  The Special Committee included three purportedly independent directors of Myovant, which served as purportedly independent members of the Company's Audit Committee: Mark Guinan, Terrie Curran, and Nancy Valente.  *Id.*  The Myovant Board tasked the Special Committee with reviewing and evaluating any proposal from Sumitovant, negotiating the terms of any such transaction and making a recommendation to the Board on whether to enter such a transaction, and identifying and evaluating "available alternatives to a potential transaction with Sumitovant, including remaining a separate company."  *Id.*  Shortly after its formation, the Special Committee retained Goldman Sachs to act as its independent financial advisor.  *Id.* at 26.

Over the course of five months, from April to October 2022, the Special Committee engaged in communications with advisors to Sumitovant, including related to the ongoing due diligence process being conducted by Sumitovant through its advisor, J.P. Morgan.

In September 2022, the Special Committee considered "the possibility of conducting outreach to potential third parties other than Sumitovant in advance of receiving a proposal from Sumitovant," but ultimately decided not to do so, apparently based on "the risk that Sumitovant

and SMP would be unwilling to support a sale of Myovant to a third party which could make any outreach futile, the likelihood that few parties other than one of Myovant's current commercial partners would be interested in a transaction and the potential negative impact on Myovant and its relationships with third parties if such outreach were to become known." *Id.* at 28.

2.    <u>The Proposals and Approval by the Special Committee</u>

On September 30, 2022, Sumitovant delivered a non-binding proposal to Myovant offering to "acquire all of the Myovant common shares not already owned by Sumitovant for $22.75 per share in cash" (the "Original Proposal"). *Id.* "In the proposal letter, Sumitovant and SMP stated that they were only interested in acquiring additional Myovant common shares and not interested in selling any of the Myovant common shares that Sumitovant owned or supporting any alternative sale, merger or similar transaction involving Myovant." *Id.*

The following day, the Special Committee held a meeting to consider the Original Proposal. *Id.* As part of that meeting, Goldman Sachs presented financial analyses on the proposed price. "Following evaluation and discussion of the offer price and other terms of Sumitovant's and SMP's proposal, the Special Committee unanimously determined that Sumitovant's and SMP's proposal significantly undervalued Myovant and, therefore, was not in the best interests of Myovant or its shareholders." *Id.* at 29. The Special Committee decided to stop engaging on the due diligence process or negotiation of the Merger Agreement and instructed its financial advisor, Goldman Sachs, to communicate the rejection of the Original Proposal to J.P. Morgan, the financial advisor to Sumitovant. *Id.*

After rejecting the Original Proposal on the basis that it "significantly undervalued Myovant," the Special Committee again considered whether to reach out to third parties that may be interested in purchasing Myovant. However, the Special Committee again declined to do so.

*Id.*  Although one alternative bidder came forward and expressed interest, that bidder ultimately stated that it would not make an offer because of Sumitovant had publicly stated that it would not support any alternative to the Merger.  *Id.* at 30.  Although the Special Committee received no updated proposal from Sumitovant, the Special Committee instructed Goldman Sachs to inform J.P. Morgan that "Sumitovant should be looking to provide value near $30.00 per share."  *Id.*  This number was apparently based on analysis by Goldman Sachs.  *Id.*

After a few weeks of additional negotiations and due diligence, Sumitovant submitted a second proposal for $25.25 per share in cash (the "Revised Proposal").  *Id.* at 31.  The Special Committee rejected the proposal.  *Id.*  After further negotiations between Sumitovant and the Special Committee on the per share price, Sumitovant submitted a final revised offer at $27 per share in cash (the "Final Proposal").  Although information from Goldman Sachs had previously indicated to the Special Committee that $30 per share would be consistent with its analysis, Goldman Sachs delivered a revised opinion that the $27 share price was fair.  *Id.* at 33.  On October 23, 2022, approximately three weeks after the receipt of the Original Proposal, the Special Committee voted to approve the Merger (and all associated transactions and documentation), which was subsequently approved by the Myovant Board later the same day.  *Id.*

The Merger ultimately closed on March 10, 2023.  Following the Merger, Myovant became a wholly owned subsidiary of Sumitovant Ltd.

## C.    Bermuda Appraisal Proceeding

On February 27, 2023, Petitioner and other dissenting shareholders initiated a proceeding in Bermuda, asking the Bermuda court to determine the fair value of their shares under Section 106(6) of the Bermuda Companies Act.  As described in the accompanying declaration of Mark Chudleigh, Petitioner and the other dissenting shareholders will have the opportunity to present

documentary evidence, witness testimony, and legal arguments to the Bermuda Court.  The Bermuda Court will be charged with determining the fair value of the dissenting shareholders' shares.  This process involves examining both the valuation of the Company and the fairness of the process that led to the approval of the Merger.

### D.    Respondents and the Discovery Sought

Through this Application, Petitioner seeks discovery from Respondents, which include the Buyer in the Merger and its operating subsidiary and directors, the financial advisor to the Special Committee that approved the Merger, and the financial advisor to the Buyer, all on issues relevant to the Appraisal Proceeding, including: (i) the fairness of, and the process to reach, the Merger price, including negotiations between Sumitovant, as the Buyer, and the Special Committee; (ii) Myovant's valuation, including documents concerning any forecasts of the Company's future performance by Sumitovant and its financial advisor and the Special Committee and its financial advisor; and (iii) documents pertaining to any alternative bids to acquire the Company ("Requested Discovery").  The Requested Discovery will significantly assist the Bermuda Court in evaluating the Merger and determining the fair value of Petitioner's shares in the Company.  *See* Declaration of Mark Chudleigh ("Chudleigh Decl.") ¶¶ 34–35.

#### 1.    Sumitovant

Sumitovant Ltd. acted as the Buyer in the Merger.  Loft Decl., Ex. 6 (Proxy Statement) at 1.  Sumitovant Ltd. was also the majority owner of Myovant prior to the Merger.  According to the Proxy Statement, Sumitovant Ltd. is a wholly owned subsidiary of Sumitomo Pharma Co., Ltd., a pharmaceutical company in Japan.  *Id.* at 85.  The operating company of Sumitovant Ltd. is Sumitovant Biopharma, Inc. ("SBI"), a Delaware corporation and a wholly owned subsidiary of Sumitovant Ltd.  *Id.*  According to the Proxy Statement, Sumitovant Ltd. has a "principal office

address" at 151 W. 42nd Street, 15th Floor, New York, NY 10036.  The Proxy Statement also states that "SBI's principal office address is 151 West 42nd Street, 15th Floor, New York, NY 10036." *Id.*

Ms. Myrtle Potter "has served as a director of the Sumitovant [Ltd.] Board and as a director of the SBI Board and Chief Executive Officer of SBI . . . since December 2019."  *Id.* at 109.  Under the section of the Proxy Statement about Ms. Potter, it states that "The principal business address of SBI is 151 West 42nd Street, 15th Floor, New York, NY 10036."  *Id.* at 110.  The Proxy Statement describes the extensive role that Ms. Potter played in the Merger, including conducting key meetings with Myovant management and negotiating the price of the Merger.  *See, e.g.*, *id.* at 25 ("Mr. Guinan spoke with Ms. Potter regarding the list of high priority diligence requests that Sumitovant and SMP had provided on April 6."); *id.* at 28 ("Ms. Potter delivered the proposal letter containing a non-binding proposal to acquire all of the Myovant common shares not already owned by Sumitovant for $22.75 per share in cash"); *id.* at 31 ("Ms. Potter, Mr. Guinan and representatives of Skadden and Sullivan & Cromwell had a call to discuss most of the remaining open issues, apart from the price per share payable as merger consideration, with respect to the Merger Agreement"); *id.* at 32 ("Ms. Potter indicated that $27.00 per share was the best and final price she was able to offer.").  Ms. Potter remains the Chief Executive Officer of SBI.  The Proxy Statement lists Ms. Potter's "current business address" as the same address as the Roivant, Sumitovant Ltd., and SBI business address in New York City.  *Id.* at 132.  According to a licensed private investigator's search, Ms. Potter may be reside in New York City, including because she lists New York City as her location on her LinkedIn profile.  Declaration of Tyler Burtis ("Burtis Decl.") ¶ 3.

Mr. Matthew Gline is a director of Sumitovant Ltd. and the Chief Executive Officer of Roivant Sciences, Inc.  *Id.* at 133.  The Proxy Statement describes Mr. Gline's "current business address" as the same address as the Roivant, Sumitovant Ltd., and SBI business address in New York City.  *Id.* at 132.  As a member of the board of the Buyer, Sumitovant Ltd., Mr. Gline voted to approve the Merger Agreement and likely would have engaged in discussions related to negotiation of the Merger, including the Merger price.  *See, e.g.*, *id.* at 34 ("Also on October 23, 2022, the Sumitovant Board met and approved the entry into the Merger Agreement by Sumitovant and SMP and the entry into the Sumitovant Voting Agreement by Sumitovant.").  According to a licensed private investigator's search, Mr. Gline is listed as the owner and current resident of an apartment in New York City.  Burtis Decl. ¶ 4.

2.    Goldman Sachs & Co. LLC

Goldman Sachs & Co. LLC ("Goldman Sachs") is headquartered in New York City and incorporated in New York.  *See* Loft Decl., Ex. 7.  According to the Proxy Statement, Goldman Sachs acted as the financial advisor to the Special Committee of Myovant that approved the transaction.  The Proxy Statement describes the extensive involvement of Goldman Sachs in analyzing the Proposals, conducting negotiations, and ultimately opining on the fairness of the Merger price.  *See, e.g.*, Proxy Statement at 26 ("Representatives of Goldman Sachs and Myovant's management reviewed information provided to Sumitovant as part of its ongoing due diligence process."); *id.* at 27 ("The Special Committee discussed the Initial Projections prepared by Myovant's management that were previously presented by Goldman Sachs to the Special Committee on June 28 and the assumptions underlying those projections"); *id.* ("Representatives of Goldman Sachs also reviewed the Revised Projections as well as certain sensitivity analyses prepared by Goldman Sachs as requested by the Special Committee"); *id.* at 29 ("representatives

of Goldman Sachs communicated to representatives of J.P. Morgan that the Special Committee determined that Sumitovant's and SMP's proposal significantly undervalued Myovant"); *id.* ("The Special Committee discussed with representatives of Goldman Sachs and Skadden the possibility of conducting outreach to potential third parties other than Sumitovant"); *id.* at 31 ("Representatives of Goldman Sachs discussed with the Special Committee that Company A had determined not to submit a proposal for a transaction with Myovant.").  Goldman Sachs ultimately concluded that the Merger price was fair from a financial point of view.  *See id.* at 33.

3.   J.P. Morgan Securities LLC

J.P. Morgan Securities LLC ("J.P. Morgan") is headquartered in New York City and incorporated in Delaware.  *See* Loft Decl., Ex. 8.  According to the Proxy Statement, J.P. Morgan acted as the financial advisor to Sumitovant, the Buyer in the Merger.   The Proxy Statement describes the extensive involvement of J.P. Morgan in conducting due diligence and negotiations as part of the Merger.  *See, e.g.*, Proxy Statement at 28 ("representatives of Goldman Sachs and J.P. Morgan held calls to discuss the status of due diligence and the process being conducted by Sumitovant and SMP to evaluate whether to pursue a possible transaction with Myovant"); *id.* at 30 ("Representatives of J.P. Morgan indicated that once due diligence and merger agreement negotiations were substantially complete, Sumitovant and SMP would expect to be in a position, subject to receipt of internal governance approvals and the results of due diligence, to make an improved proposal"); *id.* at 31 ("On October 20, 2022, the board of directors of SMP held a meeting by videoconference, with representatives of Sullivan & Cromwell and J.P. Morgan in attendance.").

11

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a pending foreign proceeding. *Intel*, 542 U.S. at 246. A Section 1782 application must satisfy three statutory requirements: (1) the discovery is sought from someone who resides or is found within the ddistrict; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017).

If these statutory requirements are met, the court then considers four discretionary "*Intel*" factors in deciding whether to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

In exercising this discretion, courts are often mindful of "the twin aims of Section 1782 providing efficient means of assistance to participants in international litigation, and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015). None of the discretionary factors should be given more weight than the others, and no one factor is dispositive. *Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. App'x 95, 97 (2d Cir. June 17, 2009). Moreover, "[a]s a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States

for use in foreign litigation." *In re Porsche Automobil Holding SE*, No. 1:15-mc-417 (LAK), 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).

## I.   THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782.

### A.   Respondents Are Found in this District.

Section 1782's first statutory element—that an entity "reside or is found" in the District— is coextensive with the limits of personal jurisdiction consistent with due process. *In re del Valle Ruiz*, 939 F.3d 520, 527–28 (2d Cir. 2019). Section § 1782's requirement that Respondents "reside" or can be "found" within the District can be satisfied if there is specific personal jurisdiction over them in this District. *See id.* at 527.

### 1.   Entity Respondents

Consistent with due process, "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). A corporation is at home (and thus subject to general jurisdiction, consistent with due process) in a state of its: (i) incorporation or (ii) principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 & n.19 (2014); *see Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). As to the entity Respondents, the "found in" requirement is satisfied by their being headquartered in New York City. *In re Lane*, No. 22 MISC. 34 (LGS), 2022 WL 16737132, at *3 (S.D.N.Y. Nov. 7, 2022).

2.    Individual Respondents

As to the individual Respondents, to establish general personal jurisdiction, "a plaintiff must demonstrate the defendant's 'continuous and systematic general business contacts' with the forum." *Owen v. Elastos Found.*, No. 1:19-CV-5462-GHW, 2021 WL 5868171, at *7 (S.D.N.Y. Dec. 9, 2021). Section § 1782's requirement that Respondents "reside" or can be "found" within the District can also be satisfied if there is specific personal jurisdiction over them in this District. *See In re del Valle Ruiz*, 939 F.3d at 527. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted). For a court to exercise specific jurisdiction over a defendant, consistent with due process, the suit must arise from or relate to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of Ca., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). This requires an analysis of whether the defendant purposefully directed his activity at the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

As set forth below, there is both general and specific personal jurisdiction over the individual Respondents, Ms. Potter and Mr. Gline, in this District. According to a licensed private investigator's search, both Ms. Potter and Mr. Gline reside in New York City. Burtis Decl. ¶¶ 3–4. Residence in New York City satisfies the "resides or is found" requirement for the individual Respondents. *Owen*, 2021 WL 5868171, at *8.[2]

---

[2] Alternatively, both individual Respondents have continuous and systematic contacts with this District sufficient for general jurisdiction because the Proxy Statement identifies their principal business addresses in New York City. While the "paradigm forum for the exercise of general jurisdiction is an individual's domicile," it is not the exclusive forum for general personal jurisdiction. *See id.* at *8 ("While Han may now reside in China, as pleaded, Han maintained a residence in Cambridge, Massachusetts as of the date this action was filed and received service of process at that residence. Such allegations are sufficient to plead general personal jurisdiction at

Further, their participation in the Merger, which involved de-listing the Company from the New York Stock Exchange, independently establishes that Respondents are "found in" this District for purposes of Section 1782.  As Judge Failla recently held, trading securities on a New York-based exchange subjects a foreign entity to specific personal jurisdiction in this District, including for purposes of Section 1782.  *See Pfaff v. Deutsche Bank AG*, No. 20-mc-0025-KPF, 2020 WL 3994824, at *10 (S.D.N.Y. July 14, 2020) (holding that "trading securities or commodities on an exchange in the forum subjects the defendant to specific personal jurisdiction in such forum").  Here, this action arises out of a take-private transaction of Myovant whereby Ms. Potter and Mr. Gline were directors of the Buyer, which purchased Myovant and, as a condition to that transaction, Myovant was de-listed from the New York Stock Exchange, a securities exchange located in New York City.  Like in *Pfaff*, here, "the discovery material sought . . . largely relates to Moving Respondents'" activity on a securities exchange based in New York City, *Pfaff*, 2020 WL 3994824, at *10, and thus the requested discovery proximately resulted from Respondents' forum contacts, even if Respondents did not take those actions in New York.[3]

---

this stage."); *Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11 CIV. 5980 RA JLC, 2013 WL 5977440, at *5 (S.D.N.Y. Nov. 12, 2013), *report and recommendation adopted,* No. 11 CIV. 5980 RA JLC, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014) (finding general personal jurisdiction over individual when he "maintains a residence and/or place of business at 9560 Queens Boulevard, Rego Park, New York 11374" notwithstanding that he also "maintains a residence in West Palm Beach, Florida"); *Motorola Credit Corp. v. Uzan*, No. 02 CIV.666 (JSR), 2002 WL 31319932, at *1 (S.D.N.Y. Oct. 16, 2002) (holding there was not "any due process concern" for exercising general personal jurisdiction over individuals, including because, among other things, "most, if not all, the individual defendants maintain residences in New York").

[3] A federal court in California recently applied *Pfaff* in the context of a Section 1782 proceeding for discovery for use in a Cayman appraisal proceeding arising out of the take-private transaction of Sina, a NYSE-listed company.  The court held that the "found in" requirement was satisfied because Respondent's "transaction of Sina stock is sufficient for New Wave to reside or be found in the Southern District of New York," because, prior to the take-private transaction at issue, Sina was listed on the New York Stock Exchange.  *Oasis Focus Fund LP v. New Wave MMXV Ltd.*, No. 22-mc-80291-TLT, ECF No. 42 (Order) (N.D. Cal. March 8, 2023).  The result should be no different here.

If some of the requested discovery happens be located outside of the United States, this does not usually change the analysis. The Second Circuit has held that documents located outside the United States are subject to discovery under Section 1782:

> [T]he text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure in turn authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control. Hence § 1782 likewise allows extraterritorial discovery.

*Valle Ruiz*, 939 F.3d at 533; *see also Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) ("[T]he location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a *per se* bar to discovery under § 1782.").

And following the Second Circuit's decision in *Valle Ruiz*, courts in this Circuit and elsewhere across the country have held that Section 1782 reaches evidence located abroad. *See, e.g.*, *In re Kuwait Ports Authority*, No. 1:20-MC-00046-ALC, 2021 WL 5909999, at *11 (S.D.N.Y. Dec. 13, 2021) (holding if "there are documents located abroad, so long as they are in the possession, custody, or control of Citibank, the extraterritorial discovery is permissible"). While extraterritoriality is sometimes a discretionary consideration in assessing whether the discovery sought is unduly burdensome under the fourth *Intel* factor, there is no undue burden here. *See* Section II.D. *infra*.

### B.    The Discovery Sought is "For Use" in a Foreign Proceeding.

A Section 1782 application establishes the "for use" requirement by showing that the Requested Discovery may be submitted and relied on by the foreign tribunal. *See Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015). To satisfy this

element, Petitioner must merely show that it has the procedural right to submit the requested documents to the foreign tribunal.  *Accent Delight*, 869 F.3d at 132.  A Section 1782 petitioner is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings.  *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application").  Instead, the district court considers "the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal."  *Accent Delight*, 869 F.3d at 131 (emphasis in original); *Mees*, 793 F.3d at 298 ("for use" element satisfied if materials sought can "be employed with some advantage or serve some use in the proceeding").

As explained in the declaration from Petitioner's Bermuda counsel, the Bermuda Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained through Section 1782 and otherwise admissible.  In the Appraisal Proceeding, the Bermuda Court will consider all facts and matters that may have a bearing on the determination of fair value.  As explained by Petitioner's Bermuda counsel, particularly when the Company points to the Merger price as an indicator of fair value, the Court's inquiry often turns to a consideration of whether the process that led to that price was a fair process.  Chudleigh Decl. ¶¶ 15–18.

The Requested Discovery from Respondents, as the Buyer and financial advisors to the Buyer and Special Committee, targets key information about both the price and the process through which the price was considered, negotiated, and ultimately agreed upon between the Buyer and the Special Committee.  Accordingly, the Requested Discovery will be of "use" to the Bermuda Court given its relevance in determining the fair value of Petitioner's shares in Myovant.

C.      Petitioner Is An "Interested Person."

"No doubt litigants are included among . . . the interested persons who may invoke § 1782." *Azima v. Citibank, N.A.*, No. 1:22-MC-72 (KPF), 2022 WL 1287938, at *3 (S.D.N.Y. Apr. 29, 2022) (quoting *Intel*, 542 U.S. at 256).  Petitioner is a party to the Appraisal Proceeding, Chudleigh Decl. ¶ 9, and is thus an "interested person" under Section 1782.

II.     THE *INTEL* FACTORS WEIGH STRONGLY IN FAVOR OF DISCOVERY.

A.      *Intel* I: Respondents Are Not Parties to the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a participant in the foreign proceeding.  This is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.  Here, Respondents are not participants in the Appraisal Proceeding and are not subject to the jurisdiction of the Bermuda court.

The Application also does not seek discovery that would be duplicative of discovery available in the Appraisal Proceeding.  It is conceivable that certain of the Respondents' evidence could be available from Myovant, the party to the Appraisal Proceeding, given that Ms. Potter was a legacy board member of Myovant and Goldman Sachs was advisor to the Myovant special committee.  However, the proposed Subpoenas are tailored to seek evidence that is not duplicative of what may be available in the Appraisal Proceeding.  With respect to Ms. Potter, the proposed subpoenas seek evidence only in her capacity as director of the Buyer, not in connection with her role as director of Myovant.  As to Goldman Sachs, the proposed Subpoenas seek discovery only insofar as the discovery is outside Myovant's "possession, custody, or power"—the limit of what

would be available through the disclosure process in the Appraisal Proceeding.  Chudleigh Decl. ¶ 19.

Accordingly, the first *Intel* factor weighs in favor of granting the Application.

**B.      *Intel* II: The Bermuda Court is Receptive to the Requested Discovery.**

The second *Intel* factor requires courts to consider whether the "nature, attitude and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance.  *Brandi–Dohrn*, 673 F.3d at 81.  In the Second Circuit, courts "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782 . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995).  "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Id.* at 1102; *see also In re Porsche*, 2016 WL 702327, at *8 ("The law on this factor is clear: 'District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals' that they would reject Section 1782 assistance.'") (internal citations omitted).

Therefore, there is a strong presumption that foreign tribunals will be receptive to evidence obtained under Section 1782, and thus the burden is placed on the party opposing discovery to show that a foreign tribunal would reject the evidence obtained through Section 1782.  *See In re Al-Attabi*, 21-MC-207 (VSB) (RWL), 2022 WL 229784, at *8 (S.D.N.Y. Jan. 26, 2022) (appeal filed) ("Second Circuit case law places the burden on the party opposing discovery [under Section 1782] to show that a foreign court would *not* be receptive to this assistance.") (emphasis in original) (internal quotation marks omitted).

Bermuda Courts will consider any evidence that has a bearing on determining the fair value of a company's shares.  *See* Chudleigh Decl. ¶¶ 25–31.  Moreover, as set forth in the Chudleigh Declaration, Bermuda courts have specifically held that a Section 1782 application can be used to obtain discovery for use in Bermuda proceedings.  *See id.* ¶ 26–31.  Further, multiple U.S. courts have recognized that Bermuda courts are receptive to evidence obtained through Section 1782.  *See, e.g.*, *In the Matter of the Application of Winston Wen-Young for Assistance Before a Foreign Tribunal*, No. 21-cv-8627, ECF No. 19 (D. N.J. June 15, 2021) (granting modified 1782 application for discovery to be used in Bermudan proceedings); *Am. Patriot Ins. Agency, Inc. v. Hendricks*, No. 10-CV-00985, ECF No. 8 (N.D. Ill. Feb. 19, 2010) ("This matter coming to be heard upon [Petitioners'] Petition for Discovery Litigation under 28 U.S.C. § 1782 . . . is granted."); *see also Letter of Request for Examination of Witness Out of Jurisdiction, Am. Patriot Ins. Agency, Inc. v. Hendricks*, No. 10-CV-00985, ECF No. 1-3 (N.D. Ill. Feb. 12, 2010) ("Now I . . . a Judge of the Supreme Court of Bermuda hereby request . . . you will be pleased to summon the said witness . . . . It is the understanding of this court [the Supreme Court of Bermuda] that the granting of assistance is authorised by your federal rules of civil procedure."); *In re Application of Hill*, 2005 WL 1330769 (S.D.N.Y. June 3, 2005) (rejecting motion to quash 1782 subpoena for discovery to be used in Bermudan and Hong Kong liquidation proceedings).

Accordingly, the second *Intel* factor weighs in favor of granting the Application.

**C.      *Intel* III: Petitioner Is Not Circumventing Foreign Proof-Gathering Restrictions.**

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  In *Intel*, the Supreme Court expressly rejected the notion that

Section 1782 requires that the evidence be discoverable in the foreign proceeding itself. *Id.* at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). This factor thus counts against discovery only in the extreme circumstances where a Section 1782 application would circumvent "proof-gathering restrictions," that is, "rules akin to privileges that *prohibit* the acquisition or use of certain materials," *Mees*, 793 F.3d at 303 n.20 (emphasis in original), or "discovery that trenched upon the *clearly established* procedures of a foreign tribunal." *Euromepa*, 51 F.3d at 1099 (emphasis in original, internal quotation marks omitted). No such circumstance is present here.

In addition, there is no exhaustion requirement—*i.e.*, a requirement that petitioner first seek the discovery in a foreign court. *Mees*, 793 F.3d at 303 ("We have rejected such a quasi-exhaustion requirement, reasoning that it finds no support in the plain language of the statute and runs counter to its express purposes.") (internal quotation marks omitted); *In re Top Matrix Holdings, Ltd.*, 1:18-MC-465 (ER), 2020 WL 248716, at *6 (S.D.N.Y. Jan. 16, 2020) ("Applicants are not required to exhaust all available remedies in the foreign jurisdiction before filing a Section 1782 application."). Instead, the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner gathering the information sought. *See Brandi–Dohrn* 673 F.3d at 82 ("While *Intel* concerned the *discoverability* of evidence in the foreign proceeding, we see no reason why it should not extend to the *admissibility* of evidence in the foreign proceeding.") (emphasis in original). No such prohibition exists here. Therefore, the third *Intel* factor weighs in favor of granting the Application.

###### D.      *Intel* IV: The Subpoenas Are Not Unduly Burdensome.

The Requested Discovery is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *Valle Ruiz*, 939 F.3d at 532–33 ("[T]he text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure"); *see also In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998) ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute."). The Subpoenas seek documents and information directly relevant to the central issues in the Appraisal Proceedings. *See* Section I.B., *supra*.[4] In addition, the Subpoenas are temporally limited to the period in which the Merger was being contemplated, negotiated, and executed.

Further, to the extent any of the Requested Discovery is located outside of the United States, that does not create any undue burden. The documents sought will principally be in electronic form, in English, and likely are accessible from the United States in any event. *See Matter of Degens*, No. 1:20-MC-237 (JGK) (RWL), 2020 WL 4252725, at *5 (S.D.N.Y. Jul. 24, 2020) ("Most if not all the records sought should be available electronically and therefore of little burden to access and produce. Accordingly, requiring production of documents no matter where they are deemed to reside is appropriate in this case."); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. CIV.M19-88 BSJ, 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006)

---

[4] *See also In re Gushlak*, No. 11-MC-218 (NGG), 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (a Section 1782 request, like any other discovery request, is "reasonably calculated to lead to relevant matter if there is *any possibility* that the information sought may be relevant to the subject matter of the action") (emphasis in original) (internal citations omitted); *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998).

("The fact that the documents are located abroad, itself, is of little concern.  They can easily be shipped to McKinsey's headquarters in New York (or perhaps accessed electronically).").[5]

Petitioner is also willing to meet and confer with Respondents to address any scope or burden concerns.  If the Court has remaining concerns about undue burden, granting the Application will not preclude Respondents from bringing a motion to modify the Requested Discovery.  If the Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright" and precluding any discovery into those issues directly probative of the matters in the Appraisal Proceeding.  *Euromepa, S.A.*, 51 F.3d at 1101; *see also In re Habib*, No. 1:21-MC-522 (KMK), 2022 WL 1173364, at *4 (S.D.N.Y. Apr. 20, 2022) ("Where discovery sought under § 1782 is unduly burdensome, the Second Circuit has instructed district courts to issue 'a limited grant of discovery,' where possible, rather than deny the application.") (internal citations and quotations omitted); *Top Matrix Holdings Ltd.*, 2020 WL 248716, at *7 (granting application because even though petitioner's "request is too broad, it can be appropriately trimmed.").

In addition, district courts have typically been "generous" in granting Rule 30(b)(6) depositions in Section 1782, even in cases with "tight schedule[s]" and other potential difficulties. *In re Porsche*, 2016 WL 702327, at *13 (permitting 30(b)(6) deposition despite "tight schedule" because it was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance they would have to produce documents and prepare

---

[5] *See also Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-(WHO) (TSH), 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020) ("Respondents' concerns about producing documents located outside the United States is largely anachronistic").

witnesses on a short timetable").[6] Here, Rule 30(b)(6) depositions of the entity Respondents, and an individual deposition of the individual Respondents, are appropriate and will significantly aid the Bermuda court in understanding the negotiation and valuation record in a complex, multi-billion dollar transaction.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant its Application.

Dated: May 23, 2023

Respectfully submitted,

By: */s/ Duane L. Loft*

Duane L. Loft
Brianna Hills Simopoulos
Mark C. Davies
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970 2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com
Mark.Davies@pallasllp.com

---

[6] *See also In re Mother's Milk, Inc.*, No. 5:20-mc-00004-M, 2020 WL 2514315, at *5 (S.D.N.Y. May 15, 2020) (permitting 30(b)(6) deposition because it would "provide helpful evidence to the [foreign] court in moving the case forward"); *In re Accent Delight*, No. 5:20-mc-00004-M, 2018 WL 2849724, at *5–6 (S.D.N.Y. June 11, 2018) (same).